IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TREY L. SCHULZ,

    **Plaintiff,**

    v.                                                          CASE NO. 23-3021-JWL

WILLIAM WONDRA, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Trey L. Schulz is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in pretrial detention at the Sedgwick County Jail in Wichita, Kansas ("SCJ"). The Court provisionally grants Plaintiff's motion for leave to proceed in forma pauperis. Plaintiff remains obligated to provide his financial information by February 23, 2023, as set forth in this Court's Notice of Deficiency at Doc. 3.

Plaintiff alleges that he "was denied medical care when experiencing symptoms culminating in a heart attack." (Doc. 1, at 2.) Plaintiff alleges that he was forced to suffer in his cell without medication or medical assistance of any kind. *Id*. Plaintiff alleges that on June 13, 2021, Plaintiff complained three times to the Pod Deputy regarding Plaintiff's chest pain, shortness of breath and dizziness. *Id*. at 4. Plaintiff alleges that "[n]o medical action was taken." *Id*. Plaintiff alleges that on June 15, 2021, he reported chest pain to the Pod Deputy, but no medical action was taken. *Id*.

Plaintiff claims deliberate indifference to his medical needs as a pretrial detainee. Plaintiff names as defendants: William Wonda, P.A.; Travis Nicholson, Chronic Care Provider; John Doe (1) Detention Deputy; John Doe (2) Detention Deputy; (fnu) Martinez, Sergeant; and Denise (lnu), Director of Nursing. Plaintiff seeks a declaration that Defendants violated the United States Constitution, an order compelling Defendants to provide adequate medical care, and nominal damages. *Id*. at 6.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff must also satisfy the subjective prong.  The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).  "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, ___ F.4th ___, 2023 WL 327846, at *4 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

It appears that Plaintiff has raised these same claims in a prior case.  *See Schulz v. Nicholson*, Case No. 21-3159-JWL.  Instead of adding factual allegations in his present case, he has elected to omit assertions he made in his prior case.  In his prior case, he did not allege that his symptoms "culminated in a heart attack" as he has alleged in his current case.  Plaintiff's complaints in his prior case, and his response filed on November 29, 2021, fail to mention a heart attack.

In his prior case, Plaintiff set forth detailed facts in his original complaint (Doc. 1) and in the complaint he submitted on the Court-approved form (Doc. 13).  In his complaint on the Court-approved form, Plaintiff claimed that he entered a sick call request for chest pains, shortness of breath, aches and pains, and confusion, on June 9, 2021.  *Id*. at Doc. 13, at 4. Plaintiff alleged that on June 11, 2021, a Pod Deputy sent Plaintiff to the clinic for his symptoms, where it was determined that he had high blood pressure and he was given medication.  *Id*. Plaintiff alleged that on June 12, 2021, he woke up in a panic and barely able to breath, he informed the Pod Deputy, and was sent to the clinic where he was given Tylenol and Ibuprofen

to help him sleep and was told that a chart review would be conducted on Monday by the provider. *Id*. at 7. Later that afternoon, Plaintiff was called to the clinic for a blood pressure check which measured as 150/73. *Id*. Plaintiff alleged that on June 13, 2021, Plaintiff was called to the clinic by Eddy Doe for another blood pressure check which measured as 160/90. *Id*. Plaintiff alleged that later that evening he complained to the Pod Deputy regarding his chest pains, shortness of breath, and dizziness, but the deputy said that the clinic did not answer and that he would call back. *Id*. Plaintiff was told that they were busy doing med pass and that the "answer would be what was dispensed at med pass." *Id*.

Plaintiff alleged that he was called to the clinic on June 15, 2021, for a blood pressure check which measured as 162/100. *Id*. at 8. When Plaintiff complained later of chest pains, confusion, and shortness of breath, the Pod Deputy told him to put in a sick call, which Plaintiff did. *Id*. The next day, Plaintiff was supposed to have an appointment, but was told he had already been seen for the issue. *Id*. On June 17, 2021, Plaintiff was sent to the clinic, was seen by a medical provider, and was told that his labs, which were drawn in May, looked fine although his cholesterol was high. *Id*. On June 19, 2021, Plaintiff was sent to the clinic with chest pains and P.A. Wonda told Plaintiff that his bloodwork and EKG were "fine," nothing was abnormal, and that they were going to keep checking Plaintiff's blood pressure once a week for five weeks. *Id*. at 9. Plaintiff saw a medical provider again on June 23, 2021, and was told that his vitals were normal and there was nothing they could do. *Id*. On July 2, 2021, Plaintiff put in a sick call for chest pains and "was immediately called to the clinic," his blood pressure measured as 180/100, and an EKG was given which showed normal results. *Id*. at 9–10. On July 4, 2021, Plaintiff told the Pod Deputy that he was experiencing chest pains, and the Pod Deputy replied that the clinic refused service. *Id*.

Plaintiff's original complaint in that case (Doc. 1) additionally states that Plaintiff was sent to the clinic on June 10, 2021, his blood pressure measured at 150/100, his vitals were checked, he received an EKG and was told the results were fine, and medical staff were ordered to monitor his vitals for the next three days. (Doc. 1, at 4.) Plaintiff alleged that "Whitney then gave the plaintiff a medication called Clon[i]dine to lower his blood pressure and returned him to his cell." *Id.* at 5. Plaintiff also alleged that on June 11, 2021, the LPN gave Plaintiff propanol[1] [sic] and told him they were starting him on 80mg extended release 6-15-21. *Id.* Plaintiff also alleged that he went back to the clinic on June 17, 2021, where medical staff drew blood and measured his blood pressure as 153/97. *Id.* at 8. Plaintiff alleged that he was seen in the clinic again on June 18, 2021, and he was given Tylenol. *Id.* Plaintiff stated that he was prescribed Clonidine .2 mg on June 19, 2021. *Id.* at 9. Plaintiff also alleged that he was seen by medical staff on June 29, 2021, his blood pressure measured at 150/83, he was given blood pressure medication, and Plaintiff was told to come back in two weeks. *Id.* at 10. Plaintiff was seen by medical staff again on June 20, 2021. *Id.* Plaintiff signed his original complaint on July 5, 2021, "under penalty of perjury." *Id.* at 12.

The Court dismissed Plaintiff's prior case, finding that:

> As noted in the MOSC, Plaintiff acknowledges that he was repeatedly sent to the medical clinic by pod deputies and was repeatedly seen and monitored by medical staff. Although Plaintiff may believe that he should have received additional or alternative evaluation or treatment, a difference of opinion regarding diagnosis or reasonable treatment does not constitute deliberate indifference. *See Estelle*, 429 U.S. 97, 106-07. Plaintiff has not shown that Defendants in this matter "act[ed] with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).

*Schulz*, Case No. 21-3159-JWL, Doc. 17, at 5.

---

[1] The Court notes that Plaintiff may be referring to Propranolol.

The Tenth Circuit recently clarified that under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Lucas*, 2023 WL 327846, at *5. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted). According to the facts Plaintiff asserted in his prior case, staff at the SCJ did more than "something" and provided care that was more than the functional equivalent of a complete denial of care in this case. He was prescribed blood pressure medications, he was given two EKGs, his vitals were monitored for three days and then once a week for five weeks, he had bloodwork done and analyzed. Plaintiff has not indicated what further medical care he sought or what additional care he claims he should have been provided.

The Court finds that Plaintiff's apparent disagreement over his course of treatment does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). Plaintiff has failed to show that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

Plaintiff has also failed to set forth any individual's direct personal participation in the alleged denial of medical care. Plaintiff claims he was "denied medical care," was forced to suffer "without medication or medical assistance of any kind," and that "no medical action was taken," but he has named various medical providers as defendants. Plaintiff references a "Pod Deputy," but otherwise does not name any individuals in the body of his complaint. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes

liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)).

Plaintiff should show good cause why is current action should not be dismissed for the reasons set forth herein and in the MOSC and dismissal order in his prior case.

## IV.  Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is **provisionally granted**.  Plaintiff remains obligated to provide his financial information by **February 23, 2023**, as set forth in this Court's Notice of Deficiency at Doc. 3.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **March 15, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

Dated February 16, 2023, in Kansas City, Kansas.

                                  **S/ John W. Lungstrum**
                                  **JOHN W. LUNGSTRUM**
                                  **UNITED STATES DISTRICT JUDGE**